

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ATLC, LTD., a Florida limited
partnership,

        Plaintiff,

vs.                             CASE NO.: 6:11-cv-855-orl-31GJK

EASTMAN KODAK COMPANY,
a foreign corporation,

        Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff, ATLC, LTD., a Florida limited partnership, by and through its undersigned attorneys, sues EASTMAN KODAK COMPANY, a foreign corporation, saying as follows:

### PARTIES, JURISDICTION AND VENUE

      1.    ATLC, LTD. (hereinafter "ATLC") is a Florida limited partnership with its principal place of business in Indialantic, Brevard County, Florida.

      2.    EASTMAN KODAK COMPANY (hereinafter "KODAK") is a New Jersey corporation with it principal place of business in Rochester, Monroe County, New York. KODAK is authorized to do business in Florida.

      3.    This Court has personal jurisdiction over KODAK which is authorized to do business in Florida pursuant to Florida Statutes §48.193(1)(a), (c) and (g). At all times material hereto, KODAK is operating, conducting, engaging in or carrying on a business or business venture in the State of Florida. As more specifically set forth below,

KODAK has breached one or more contracts in the State of Florida by failing to perform acts required by the contracts to be performed in the State of Florida, including failing to make payment and deliver royalty reports to Plaintiff, ATLC, at its offices in Brevard County, Florida.  Moreover, KODAK has committed unfair or deceptive acts or practices in the conduct of trade or commerce in Florida in violation of Florida's Deceptive and Unfair Trade Practices Act.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) and (2).  The amount in controversy, exclusive of interest and costs, exceeds the sum specified in 28 U.S.C. §1332 and is between citizens of different states and/or citizens or subjects of a foreign state.

5.      Venue is proper in this district and division by virtue of 28 U.S.C. § 1391 and Local Rule 1.02.  KODAK has also contractually agreed to venue in the Middle District of Florida pursuant to the Settlement Agreement which is the subject of this action.

## ALLEGATIONS COMMON TO ALL COUNTS

## REPRESENTATION AGREEMENT

6.      KODAK owns or controls certain patents related to digital still cameras (the "DSC Patents") as referenced in the written KODAK/ATLC, Ltd. Representation Agreement dated July 30, 1998 ("Representation Agreement").  KODAK is in possession of a copy of the Representation Agreement and is familiar with its terms and conditions. A copy of the Representation Agreement is not attached in order to maintain its confidentiality, but a copy will be produced in discovery.

7.     ATLC and KODAK entered into the Representation Agreement effective July 30, 1998 in which KODAK "retained ATLC as KODAK's exclusive representative to represent KODAK in patent license negotiations with respect to the licensing of DSC Patents to third parties."  ATLC agreed "to use its best efforts to obtain patent license agreements on terms satisfactory to KODAK."

8.     The Representation Agreement provided for a contingent fee to ATLC based upon the monetary and any non-monetary consideration paid or provided to KODAK under any patent license agreements executed by KODAK and any third parties with whom ATLC had had "substantial negotiations" or provided "substantial support services" as defined in the Representation Agreement.  KODAK assigned a portion of the net proceeds, as defined in the Representation Agreement, from those agreements to ATLC as ATLC's compensation for its services.

9.     Prior to entering into the Representation Agreement, KODAK had no active program for the licensing of its DSC Patents.

10.     After entering into the Representation Agreement, ATLC and KODAK successfully negotiated patent license agreements with various entities which resulted in KODAK receiving substantial royalty payments.   The patent license agreements obligated the licensees to submit periodic royalty reports to KODAK as well as making periodic royalty payments.

11.     The patent license agreements typically required the licensee to provide a copy of the licensee's royalty report directly to ATLC.  Regardless, the course of dealing between the parties was that KODAK would provide ATLC with a copy of the licensees'

royalty report along with KODAK'S own summaries of the royalties received by KODAK and the commissions owed by KODAK to ATLC.

## SAMSUNG DIGITAL CAMERA LICENSE

12.     On or about February 1, 2002, KODAK directed ATLC to take action against Samsung relating to the infringement of KODAK's DSC Patents. Thereafter, ATLC undertook, at its own expense, to reverse engineer Samsung Digital Still Cameras and document infringement of KODAK's DSC Patents.

13.     On or about April 4, 2002, KODAK notified Samsung Electronics Corporation ("SEC") in writing that ATLC was authorized on behalf of KODAK to negotiate a long term patent license agreement covering Samsung Digital Still Cameras. KODAK corporate officers retained the final authority to approve any license agreement negotiated by ATLC.

14.     ATLC undertook substantial negotiations to license Samsung Digital Still Cameras which efforts included, but were not limited to:

      A.     Identifying those Samsung Digital Still Cameras that may infringe KODAK's DSC Patents;

      B.     Reverse engineering Samsung Digital Still Cameras and documenting infringement of KODAK's DSC Patents;

      C.     Providing documentation to Samsung's Corporate Counsel of the infringement of KODAK's DSC Patents by Samsung Digital Still Cameras;

4

D.     Corresponding with Samsung's Corporate Counsel and Samsung representatives to coordinate a meeting to discuss said infringement of KODAK's DSC Patents;

E.     Meeting with Samsung's outside counsel and designated representatives to discuss the infringement of KODAK's DSC Patents by Samsung's Digital Still Cameras and negotiating a royalty for Samsung's Digital Still Cameras;

F.     Reporting to KODAK's Corporate Counsel the results of the negotiations with Samsung and seeking approval of the negotiated royalty; and

G.     Facilitating the execution of a patent license agreement covering the Samsung Digital Still Cameras.

15.    After approximately two (2) years of work by ATLC to license Samsung Digital Still Cameras, KODAK and Samsung Techwin Co, Ltd., the exclusive manufacturer of the "Samsung" brand of Digital Still Cameras, an SEC subsidiary and member of the Samsung Group, entered into an Agreement dated January 1, 2004 licensing Samsung Digital Still Cameras (the "Samsung DSC License"). KODAK is in possession of a copy of the Samsung DSC License and is familiar with its terms and conditions. A copy of the Samsung DSC License is not attached in order to maintain its confidentiality, but a copy will be produced in discovery.

16.    Under the Samsung DSC License, KODAK received substantial royalties based on the worldwide sales and other dispositions of Samsung Digital Still Cameras.

17.     For several years, KODAK paid ATLC its assigned portion of the royalty payments received by KODAK for Samsung Digital Still Cameras.

## PRIOR SUIT AND SETTLEMENT AGREEMENT

18.     On April 4, 2006, ATLC sued KODAK in this Court for failure to make payments owed under the Representation Agreement. *See* Case No. 6:06-CV-416-ORL-28GRJ ("Prior Lawsuit").

19.     After ATLC initiated the Prior Lawsuit, KODAK unilaterally instructed its licensees to cease providing the licensee royalty reports to ATLC.  KODAK further refused to allow its personnel to continue communicating with ATLC regarding royalty payments insisting that such routine business communications be handled though counsel.  Thereafter, KODAK, through it attorneys, resumed providing licensee royalty reports and KODAK's own summaries of the royalties received by KODAK and the commissions owed by KODAK to ATLC.

20.     ATLC and KODAK entered into a Settlement Agreement and Release effective August 27, 2007 ("Settlement Agreement").  KODAK is in possession of a copy of the Settlement Agreement and is familiar with its terms and conditions.  A copy of the Settlement Agreement is not attached in order to maintain its confidentiality, but a copy will be produced in discovery.

21.     The Settlement Agreement resolved the claims made in the Prior Lawsuit, but expressly provided that certain obligations under the Representation Agreement survived including, but not limited to, the obligations described in paragraph 8 above.

6

22. Among its various terms, the Settlement Agreement included an exhibit setting forth the patent license agreements executed by KODAK and third parties with whom ATLC had "substantial negotiations" or provided "substantial support services" as defined in the Representation Agreement.

23. The Settlement Agreement further provided that KODAK would pay ATLC's commission on "the total monetary and nonmonetary compensation earned by KODAK on any buyout, modification, or amendment" of the patent license agreements listed on Exhibit B of the Settlement Agreement, if such buyout, modification, or amendment was executed more than eight (8) months prior to the expiration of the respective patent license agreement.

24. The Settlement Agreement also provided that KODAK would resume providing licensee royalty reports to ATLC in accordance with the parties' past practices.

25. Notwithstanding, KODAK has refused to provide ATLC with copies of the licensee royalty reports supporting the ongoing commission payments being paid by KODAK to ATLC.

**MODIFICATION, BUYOUT OR AMENDMENT OF SAMSUNG DSC LICENSE**

26. In 2009, the Samsung Group caused the Samsung Digital Still Camera business unit to be spun off to Samsung Digital Imaging Co. Ltd., another SEC subsidiary and member of the Samsung Group. As a result of this transaction, Samsung Digital Imaging Company became the exclusive manufacturer of the "Samsung" brand of Digital Still Cameras.

7

27.     Following the spinoff of the Samsung Digital Still Camera business unit, the Samsung Group ceased making any royalty payments to KODAK. Correspondingly, KODAK stopped remitting commission payments to ATLC for Samsung Digital Still Cameras.

28.     In the Fall of 2009, KODAK and ATLC were in communication with one another regarding Samsung's failure to pay past and ongoing royalties to KODAK from the sale of Samsung Digital Still Cameras.

29.     Recognizing their mutual interests, KODAK and ATLC agreed to work cooperatively to recover past royalties and re-establish the payment of ongoing royalties from the sale of Samsung Digital Still Cameras.

30.     To this end, KODAK drafted and both ATLC and KODAK signed a Common Interest and Non-Disclosure Agreement to facilitate the parties meeting, sharing confidential information, and discussing strategies to recover past royalties and to re-establish ongoing royalty payments to KODAK from the sale of Samsung Digital Still Cameras and the corresponding commission payments to ATLC.

31.     On or about February 8, 2010, KODAK and ATLC met at KODAK's offices in Rochester, N.Y. to discuss strategies for re-establishing royalty payments to KODAK from the sale of Samsung Digital Still Cameras and the corresponding commission payments to ATLC. During and following this meeting, KODAK represented to ATLC that it wanted to first address and resolve the issue of past due royalty payments with Samsung and that KODAK had not yet decided how it wanted to proceed with re-establishing the on-going royalty payments for the Samsung Digital Still

Cameras. KODAK also agreed to advise ATLC of the status of its discussions with Samsung regarding the royalty payments for Samsung Digital Still Cameras.

32.    Since the spinoff of the Samsung Digital Still Camera business unit, KODAK repeatedly represented to ATLC that no negotiations were ongoing with the Samsung Group regarding the license of Samsung Digital Still Cameras. KODAK made these representations knowing that they were false and were likely to mislead ATLC. KODAK also represented to ATLC that KODAK would keep ATLC advised of any negotiations with the Samsung Group regarding the license of Samsung Digital Still Cameras.

33.    The Samsung Group has now caused Samsung Digital Imaging Co. Ltd. to merge with SEC, resulting in SEC becoming the exclusive manufacturer of the "Samsung" brand of Digital Still Cameras.

34.    Following the February 8, 2010 meeting and without advising or informing ATLC, KODAK entered into a buyout, modification, or amendment of the Samsung DSC License the effect of which was to re-establish a royalty payment or payments to KODAK from the sale of Samsung Digital Still Cameras.

35.    KODAK has, thus far, refused to provide a copy of the buyout, modification, or amendment of the Samsung DSC License without ATLC compromising ATLC's rights under the Settlement Agreement.

36.    In direct contravention of its previous representations to ATLC, KODAK has recently advised ATLC that the buyout, modification, or amendment of the Samsung DSC License was effective September 16, 2010 and resulted in KODAK receiving one or

more royalty payments based on the sale or other disposition of Samsung Digital Still Cameras since 2009.

37.     The September 16, 2010 buyout, modification, or amendment of the Samsung DSC License occurred more than eight (8) months before the expiration of the Samsung DSC License.

38.     Notwithstanding the provisions of the Settlement Agreement, KODAK has refused to pay ATLC its commission based on the monetary and non-monetary consideration earned by KODAK from the buyout, modification, or amendment of the Samsung DSC License which resulted in KODAK receiving one or more royalty payments based on the sale or other disposition of Samsung Digital Still Cameras since 2009.

39.     ATLC has retained Rumberger, Kirk & Caldwell, P.A. to represent it in this action and has agreed to pay a reasonable attorney's fee therefore.

## COUNT I
## BREACH OF SETTLEMENT AGREEMENT

40.     This is an action for breach of contract seeking damages in excess of this Court's jurisdictional limits.

41.     ATLC adopts and incorporates herein by reference the allegations contained in paragraphs 1 through 39 above.

42.     KODAK has breached the Settlement Agreement by, including, but not limited to:

A.     Failing to provide to ATLC licensee royalty reports as required by the Settlement Agreement;

B.    Breaching KODAK's obligation of good faith and fair dealing owed to ATLC in connection with KODAK's efforts regarding the royalty payments for Samsung Digital Still Cameras, including without limitation, KODAK's efforts or lack thereof to re-establish royalty payments for Samsung Digital Still Cameras and Kodak's communications and/or negotiations regarding the buyout, modification, or amendment of the Samsung DSC License; and

C.    Failing to pay ATLC its assigned commission on the total monetary and nonmonetary compensation earned by KODAK on the buyout, modification, or amendment of the Samsung DSC License which resulted in KODAK receiving one or more royalty payments based on the sale or other disposition of Samsung Digital Still Cameras since 2009.

43.    On April 28, 2011, in accordance with the terms of the Settlement Agreement, ATLC served written notice on KODAK that KODAK was in breach of the Settlement Agreement. More than ten (10) days have passed, and KODAK has failed to cure the breach.

44.    The Settlement Agreement requires KODAK to pay ATLC a sum certain in quarterly installments. As a result of KODAK's breach of the Settlement Agreement, ATLC hereby elects to accelerate and declare immediately due and payable the total amounts remaining due under the quarterly payments.

45.    ATLC performed all obligations required of ATLC under the Settlement Agreement.

46.    ATLC has suffered damages as a result of KODAK's breaches of contract.

11

47.   All conditions precedent to the bringing of this cause of action have occurred or have been waived.

**WHEREFORE**, Plaintiff, ATLC, LTD., demands judgment against Defendant, EASTMAN KODAK COMPANY, for damages together with prejudgment interest, court costs, attorneys' fees and costs pursuant to the terms of the Settlement Agreement, and such other relief as this Court deems appropriate.

**COUNT II**
**VIOLATION OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT (FDUTPA)**

48.   This is an action for damages and for injunctive relief for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

49.   ATLC adopts and incorporates herein by reference the allegations contained in paragraphs 1 through 39 above.

50.   Pursuant to Florida Statute § 501.204(1), "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Deceptive and unfair acts or practices are those which offend established public policy or are "immoral, unethical, oppressive, unscrupulous, or substantially injurious" to consumers or businesses.

51.   KODAK has engaged in unfair and deceptive acts and practices in the conduct of trade or commerce with ATLC.

52.   As set forth above, KODAK entered a joint endeavor with ATLC to identify infringement of KODAK's DSC Patents, to document such infringement, and to

negotiate patent license agreements that would result in the payment of royalties to KODAK and corresponding commissions to ATLC.

53.     As part of this endeavor, ATLC, expended substantial time, money, and other resources in identifying, reverse engineering, and documenting infringement of KODAK's DSC Patents by others, including, but not limited to, Samsung.  Under the Representation Agreement, such expenditures were borne solely by ATLC and not reimbursed by KODAK.  However, once ATLC had initiated "substantial negotiations" or provided "substantial support services" toward establishing a patent license agreement with a third-party, ATLC became entitled to share in the proceeds of patent license agreements with that third-party.

54.     After approximately two years of communication and in-person negotiations with the Samsung Group by ATLC, KODAK successfully entered into the Samsung DSC License effective January 1, 2004.

55.     Pursuant to the Representation Agreement, KODAK initially paid ATLC a portion of the proceeds of the Samsung DSC License until royalty payments ceased in 2009.

56.     After the Prior Litigation and settlement, KODAK again reached out to ATLC seeking its assistance when the Samsung Group stopped paying royalties on Samsung Digital Still Cameras.  KODAK discussed the Samsung Group's failure to pay past and ongoing royalties for Samsung Digital Still Cameras, and requested ATLC's assistance to re-establish the revenue stream from Samsung Digital Still Cameras from

which ATLC would continue to receive its commissions due on the royalties received by KODAK for Samsung Digital Still Cameras.

57.     While purporting to work with ATLC under the guise of the Common Interest and Non-Disclosure Agreement to recover past royalties and re-establish the Samsung Digital Still Camera ongoing royalty payments, KODAK, acting on its own and for its own self interests and benefit, and unknown to ATLC, sought, negotiated and obtained a buyout, modification or amendment of the Samsung DSC License in an effort to circumvent KODAK's clear obligation to pay ATLC its commission on the royalty payment(s) received by KODAK for Samsung Digital Still Cameras. Moreover, KODAK intentionally sought to deceive ATLC by concealing from ATLC KODAK's actions and negotiations that resulted in the buyout, modification or amendment of the Samsung DSC License. KODAK'S conduct was both deceptive and unfair under FDUTPA.

58.     Although KODAK has received the benefit of one or more royalty payments from the sale or other disposition of Samsung Digital Still Cameras since 2009, KODAK intentionally and wrongfully engaged in activities designed to deceive ATLC and delay or avoid paying ATLC its commission on such royalty payments, and therefore, engaged in conduct that is oppressive, unscrupulous, or substantially injurious to ATLC, a legitimate business enterprise.

59.     As a result of these unfair and deceptive acts, ATLC has suffered actual damages, including the loss of millions of dollars in commissions, which ATLC had rightfully earned through expenditure of substantial time, money, and resources in first

establishing that Samsung Digital Still Cameras infringed KODAK patents and then negotiating the Samsung DSC License.

60.     Pursuant to Florida Statutes § 501.211, ATLC is entitled to recover the actual damages suffered by ATLC because of KODAK's unfair and deceptive conduct together with an injunction against KODAK to prevent the further violation of the FDUTPA by continuing to avoid paying ATLC commissions ATLC has rightfully earned.

**WHEREFORE**, Plaintiff, ATLC, LTD., demands judgment against Defendant, EASTMAN KODAK COMPANY, for damages together with prejudgment interest, court costs, attorneys' fees and costs together with a permanent injunction pursuant to Florida Statute § 501.211, and such other relief as this Court deems appropriate.

## COUNT III
## ACCOUNTING

61.     This is an action for an accounting.

62.     ATLC adopts and incorporates herein by reference the allegations contained in paragraphs 1 through 39 above.

63.     Pursuant to the Settlement Agreement, KODAK is obligated to account to ATLC for all royalties received by KODAK under any patent license agreements executed by KODAK and any third parties with whom ATLC had "substantial negotiations" or provided "substantial support services" as defined in the Representation Agreement.     KODAK assigned a portion of the net proceeds, as defined in the Representation Agreement, from such agreements to ATLC as ATLC's compensation for its services.

64.     As part of KODAK's obligation to account to ATLC, KODAK is obligated to provide copies of patent licensees' royalty statements to ATLC, which KODAK has failed and refused to do since entering into the Settlement Agreement.

65.     As more particularly set forth above, KODAK has also failed and refused to pay to ATLC its entire portion of the royalties received by KODAK as provided in the Representation Agreement.

66.     The calculations of ATLC's account with KODAK under the Settlement Agreement are extensive because they involve monies due from numerous patent licensees, including those licensees listed on Exhibit B of the Settlement Agreement.

67.     Accordingly, ATLC is entitled to an accounting of all consideration received by KODAK under any patent license agreements executed by KODAK and any third parties with whom ATLC has had "substantial negotiations" or provided "substantial support services" as defined in the Representation Agreement.

68.     All conditions precedent to the bringing of this cause of action have occurred or have been waived.

**WHEREFORE**, Plaintiff, ATLC, LTD., demands that this Court order an accounting of all sums due from Defendant, EASTMAN KODAK COMPANY to Plaintiff, ATLC, LTD., and entering final judgment for all amounts found to be due and owing to Plaintiff, ATLC, LTD., together with prejudgment interest, court costs, attorneys' fees and costs pursuant to the Settlement Agreement, and other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

69.     Plaintiff, ATLC, LTD., demands a trial by jury on all issues so triable.


**DATED:**  May 19, 2011.

s/ David C. Willis
DAVID C. WILLIS, ESQUIRE
Florida Bar No. 0477435
Trial Counsel
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 839-2186
Telecopier:  (407) 835-2086
E-mail: Dwillis@Rumberger.com

*Attorneys for Plaintiff, ATLC, Ltd.*

17