**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ATLC, LTD.,**

        **Plaintiff,**

**-vs-**                                                    **Case No. 6:11-cv-855-Orl-31GJK**

**EASTMAN KODAK COMPANY,**

        **Defendant.**

_____

# ORDER

This cause comes before the Court on a Motion to Dismiss (Doc. 66) filed by Defendant Eastman Kodak Company ("Kodak"); the Response (Doc. 68) filed by Plaintiff ATLC, Ltd. ("ATLC"); and the Reply (Doc. 71).

**I. Background**

The following facts are alleged in the Amended Complaint and taken as true for the purpose of ruling on the Motion to Dismiss. On July 30, 1998, the parties entered into an agreement (the "Representation Agreement") whereupon Kodak "retained ATLC as Kodak's exclusive representative to represent Kodak in patent license negotiations with respect to the licensing of DSC Patents to third parties." (Doc. 61, ¶ 7). The "DSC Patents" are patents owned by Kodak "related to digital still cameras." (Doc. 61, ¶ 7). Pursuant to the Agreement, if a product was suspected of violating one of the patents, ATLC would reverse engineer the product to determine which patents were violated, then negotiate an appropriate licensing fee with the infringing entity. ATLC would pay the costs and

expenses incurred in reverse engineering the products and negotiating the licensing fee, and in return, Kodak would pay ATLC a percentage of the resulting royalties.

On April 4, 2006, ATLC filed a breach of contract suit against Kodak for violation of the Representation Agreement. Under the Agreement, Kodak was required to pay ATLC a portion of the royalties received from a license agreement with any third party with whom "ATLC had had 'substantial negotiations' or provided 'substantial support services' as defined in the Representation Agreement." (Doc. 61, ¶ 8). The lawsuit alleged that Kodak "renegotiated certain patent license agreements which had originally been negotiated by ATLC in an effort, among other things, to convert the typical running royalty to a lump sum paid royalty." (Doc. 61, ¶ 20). Kodak refused to pay commissions to ATLC on the lump sum royalties because it argued that the renegotiated license agreements amounted to "new" contracts, not subject to ATLC's commissions. (Doc. 61, ¶ 20-21). The parties ultimately settled the lawsuit and entered into a settlement agreement and release effective August 27, 2007 (the "Settlement Agreement").

Pursuant to the Settlement Agreement, Kodak agreed to, (1) pay ATLC a portion of the proceeds from the lump sum royalties it renegotiated; and (2) to continue to pay ATLC commission on the remaining license agreements it negotiated that were still in effect.[1] One of these licenses, still in effect at the time of the settlement, was a DSC patent license with Samsung Techwin, Co. ("STW" or the "STW License"). In addition to the existing licenses, there were other companies with which ATLC had "substantial negotiations," but who had not yet entered into a licensing agreement with

---

[1] In Exhibit B of the Settlement Agreement, the parties listed the license agreements for which ATLC would continue to receive commissions. (Doc. 61-1).

Kodak.[2] As to these companies, the parties agreed that, "[i]f, on or before November 30, 2007, Kodak enters into a Patent License Agreement . . . [with any of the companies listed in Exhibit C] . . . ATLC is entitled to and Kodak will pay [a percentage of] the net proceeds." (Doc. 61-1, ¶ 7). One of the companies listed in Exhibit C is "Samsung."

At issue in the present suit is a license agreement between Kodak and Samsung Electronics Corporation ("SEC") which Kodak entered into in 2010 (the "SEC License"). Eight years earlier ATLC negotiated the STW License, for which it received a commission.[3] STW is a subsidiary of SEC. Sometime in 2009, STW transferred its digital camera business, the portion of the business to which the Kodak patents were applicable, to Samsung Digital Imaging Co. ("SDIC")[4] which was then acquired by SEC.[5] Thereafter, Kodak stopped receiving royalties under the STW License.

In 2009, ATLC and Kodak agreed to jointly pursue a lawsuit against SEC to reestablish royalties connected to the Kodak DSC patents. Despite having a similar interest in establishing royalty payments from Samsung, the goals of ATLC and Kodak were at odds. ATLC's goal in the litigation

---

[2] These companies are listed in Exhibit C of the Settlement Agreement. (Doc. 61-1).

[3] Kodak executed the STW License in 2004, which was negotiated by ATLC. Additionally, the Settlement Agreement specifically listed this as one of the agreements for which ATLC would continue to be paid. ATLC negotiated another license with Samsung for Kodak's "Integrated Digital Camera Patents" ("IDC Patents") but before an agreement was reached, Kodak terminated the Representation Agreement with ATLC. The SEC License includes the IDC patents, but ATLC does not contest that it is owed commissions based on the IDC Patents because the Settlement Agreement specifically excluded them. (*See* Doc. 61, at 7, n.3)

[4] The STW License was "non-transferable" unless authorized by Kodak in writing.

[5] The Complaint further asserts that all of these entities were part of the Samsung Group, which had the same management, employees, and made the same products under the Samsung trademark.

was to reestablish payments under the original STW License. Kodak's goal, on other hand, appears to have been broader. Rather than reestablish payments under the STW License, on September 16, 2010, Kodak entered into a "new" patent license agreement with SEC (the SEC License) which is the subject of this lawsuit.[6] The main issue in the present suit is whether this really was a "new" licensing agreement, or simply a modification of the 2004 STW License. If it was a "new" agreement, ATLC would not be owed a commission because it was executed after the November 30, 2007 deadline set by the Settlement Agreement. If however, it was a modification of the existing STW License, ATLC would be entitled to a percentage of the proceeds.

The Amended Complaint (Doc. 61), consists of three Counts. Count I alleges that Kodak breached the Settlement Agreement by, *inter alia*, refusing to pay commissions and failing to provide copies of the royalty reports related to the SEC License. In Count II, ATLC alleges that Kodak violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.204 (1) - (2), by entering into a new license with SEC that effectively deprived ATLC of commissions it was owed under the STW License. Finally, Count III alleges a claim for accounting; specifically that Kodak is obligated to account for royalty payments which it received from SEC.

In its Motion to dismiss, Kodak argues, *inter alia*, that the instant suit is barred by plain language of the Settlement Agreement and the relevant Licenses because, (1) the STW License was non-transferable, thus, it was terminated when STW transferred its digital camera business to SDIC; and (2) the Settlement Agreement distinguishes the STW License from any future license with any other Samsung entity.

---

[6] The SEC License agreement has been filed under seal.

**II. Standard of Review**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411,421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id*. at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

**III. Analysis**

    **A. Count I - Breach of Contract**

ATLC asserts three separate theories of breach within Count I: (1) that Kodak breached the Settlement Agreement by refusing to pay commissions on the SEC License; (2) that Kodak breached the implied duty of good faith and fair dealing by negotiating a new license with SEC rather than modifying the STW License; and (3) that Kodak breached the Settlement Agreement by failing to provide royalty reports. Kodak argues that the breach of contract claim should be dismissed because the Settlement Agreement provides that ATLC will not receive commissions from any new agreement with "Samsung" executed after November, 2007; and that the SEC License is not a modification or buyout of the STW License.

The Settlement Agreement divides Kodak's obligations to pay ATLC into two relevant parts: (1) "Exhibit B" lists the remaining licenses, which were still in effect at the time of the Settlement Agreement (one of these is the STW License). As to these licenses, Kodak was required to continue to pay ATLC commissions until the expiration of the license, as provided under the Representation Agreement. It further provides that, *if Kodak bought out, modified, or amended one of these licenses more than eight months prior to its expiration, it must compensate ATLC accordingly*. (Doc. 61-1) (emphasis added). (2) "Exhibit C" lists all the companies or entities with which ATLC had "substantial negotiations" but who had not yet entered into a licensing agreement with Kodak. One of the companies listed in Exhibit C is "Samsung." According to the terms of the Settlement Agreement, if any of these companies entered into a licensing agreement with Kodak prior to November 30, 2007, ATLC would be entitled to commissions. (Doc. 61-1).

ATLC's breach of contract claim for failure to pay commission on the SEC License is based solely on its right to payment under the STW License as listed in Exhibit B.[7] Therefore, in order to establish its right to payment under the SEC License, ATLC must ultimately show that the SEC License is not a "new" license, but rather, a "buyout, modification, or amendment" of the STW License. A modification is,

> a change in one or more respects, which introduces new elements into the details of the contract and cancels others but leaves the general purpose and effect undisturbed. Modification of a contract normally occurs when the parties agree to alter a contractual provision or to include additional obligations, while leaving intact the overall nature and obligations of the original agreement.

17A AM. JUR. 2d *Contracts* § 507 (2011) (citations omitted); 17A C.J.S. *Contracts* § 545 (2011). ATLC asserts that the SEC License is, in reality, a modification of the STW License and alleges, *inter alia*, that SDIC, SEC, and STW are all part of the "Samsung" group and thus, related companies (Doc. 61, ¶ 13); that the STW and the SEC Licenses cover the same patents (the DSC Patents) (Doc. 61, ¶¶ 42-47); and that Kodak intentionally renegotiated the STW License in an effort to deprive ATLC of its commission (Doc. 61, ¶ 44-45).

In its Motion to Dismiss, Kodak relies on the language in the SEC and STW Licenses themselves to contend that the former is not a modification of the latter.[8] Although this language may

---

[7] In the Response, ATLC states that its claim "is not governed by Exhibit C to the settlement Agreement." (Doc. 68 at 2).

[8] Specifically, in regards to the STW License: it "expressly extends only to STW and its subsidiaries" (Doc. 66 at 14); it is a "non-transferable license" *Id*. Kodak also points to specific language in the SEC License. However, pursuant to this Court's previous order to seal, the terms of the SEC License will not be reprinted here.

be relevant in the ultimate determination, it is not dispositive at this stage of the proceedings because ATLC was not a party to these agreements.[9]

Kodak also moves to dismiss Count I to the extent that it alleges a violation of the implied duty of good faith and fair dealing. Under Florida law, every contract includes an implied duty of good faith. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir.2005) (internal citation and quotation omitted). However, "[a] breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id*. In this case, the Settlement Agreement required Kodak to pay commissions to ATLC based on the STW License, or any "buyout, modification, or amendment" thereof. It follows that ATLC had a "reasonable commercial expectation" that Kodak would not renegotiate the STW License in an attempt to avoid that obligation. The Amended Complaint alleges that Kodak "intentionally avoided" its obligation under the Settlement Agreement by renegotiating a new agreement with SEC rather than facilitating a transfer. These allegations are sufficient to survive a motion to dismiss.[10] Therefore, Kodak's Motion to Dismiss will be denied as to Count I.

---

[9] ATLC also appears to allege a separate claim for breach of the Settlement Agreement for Kodak's failure to provide royalty reports. However, this does not appear to be an independent cause of action, rather, it is a reformulation of the claim for accounting in Count III, addressed *infra*.

[10] Kodak also argues that, pursuant to the "non-transfer clause" of the STW License, even though it had the power to approve a transfer, it had no obligation to do so. (Doc. 71 at 4). While that may be true, it did have substantial discretion. Under Florida law, "where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox v. CSX Intermodal, Inc*. 732 So.2d 1092, 1098 (Fla. 1st DCA 1999).

**B. Count II - FDUTPA**

Count II alleges a violation of the Florida Deceptive and Unfair Trade Practices Act. FLA. STAT. § 501.201, *et seq*. Kodak argues that Count II should be dismissed because ATLC does not fall within the definition of a "consumer" in the statute. A plaintiff may initiate a civil action under the FDUTPA against a defendant that has engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1321 (M.D. Fla. 2002) (quoting FLA. STAT. § 501.204(1)). Only a "consumer" may recover damages for alleged unfair or deceptive trade practices. *Id*. Under FDUTPA, a "consumer" is defined as "an individual; child; by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity; however denominated; or any group or combination." FLA. STAT. § 501.203(7). "Trade or commerce" is defined as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or thing of value, wherever situated." FLA. STAT. § 501.203(8).

This Court previously recognized that a plaintiff asserting a cause of action under the FDUTPA must be the "purchaser 'of any good or service, or thing of value' that the defendant advertised, solicited, provided, offered, or distributed." *Hughes Supply, Inc. v. Continental Recovery Servs. Corp.*, No. 6:07-cv-1009, 2007 WL 2120318 at *2 (M.D. Fla. 2007). ATLC alleges that Kodak violated the statute by failing to pay commissions due under the STW License. Though it may appear as if ATLC was the "purchaser" of "a thing of value," this characterization completely ignores the underlying transaction. Under the Representation Agreement, Kodak was the "purchaser" of a service and ATLC was the "seller" of that service. The fact that ATLC received a commission from Kodak does not

change the essential nature of the transaction. Therefore, Kodak's Motion will be granted as to Count II.

### C. Count III - Accounting

It is well established that an equitable claim can only be maintained where there is no adequate remedy at law. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1279 (11th Cir. 2010) (applying Florida law). ATLC alleges that any remedy at law would be inadequate because of the complexity of the calculations involved. Kodak points out, and the Court agrees, that ATLC has an adequate remedy at law for breach of the Settlement Agreement. Moreover, there is no reason to suggest that calculation of damages in this case would be overly complicated. As the Supreme Court noted, "[t]he legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962); *Managed Care Solutions*, 694 F. Supp. 2d at 1280. Accordingly, Kodak's Motion to Dismiss will be granted as to Count III. The "accounting" sought can be obtained by discovery in this case.

### IV. Conclusion

In its Motion, Kodak also claims that it is owed attorneys fees under the Settlement Agreement. Since this Order does not conclude the case, Kodak's motion for attorneys fees will be denied without prejudice.

In light of the foregoing, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 66) is **GRANTED in part and DENIED in part** as follows:

1. With respect to Count I of the Amended Complaint (Doc. 61), Defendant's Motion to Dismiss is **DENIED**;

    2.      With respect to Counts II and III, Defendant's Motion to Dismiss is **GRANTED**;

    3.      Defendant's motion for attorneys fees is **DENIED without prejudice**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 25, 2011.

Copies furnished to:

Counsel of Record  
Unrepresented Party

                                                                  GREGORY A. PRESNELL  
                                                             UNITED STATES DISTRICT JUDGE